## JOSEPH F. HUGHES AND COMPANY, INC. *v.* STOCKHAUSEN

[No. 133, October Term, 1956.]

560

*Decided March 15, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Francis B. Burch* and *Paul T. McHenry, Jr.,* for the appellant.

*John F. Heath,* with whom was *E. Rigby McDorman* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

On this appeal from a judgment entered upon a jury's verdict in an action by a subcontractor against a general contractor for a balance due under the contract and for extra work, reversal is sought on the ground of misconduct by a juror. The question was raised during the trial by a motion for mistrial, renewed at the conclusion of the testimony, and in a motion for new trial after the verdict was rendered. The trial began on June 11, 1956, and the verdict was rendered on June 20, 1956. On June 19, 1956, the appellant learned that one of the jurors, Mrs. Bernice Fisher, had talked to Mrs. Lillian Marling, an employee of the State Roads Commission, on June 16, 1956. When the trial judge was apprised of this fact, he held a hearing in chambers on the 19th, and again on the 20th, at which the testimony of Mrs. Marling, Mr. Edward Tilley, and Mrs. Fisher was taken. The motion for mistrial was then overruled.

Mrs. Marling testified that she happened to be talking to Mrs. Fisher, whom she knew well, and that Mrs. Fisher told her she "was on jury duty and loved it, and she was on the Hughes case, and I said, 'Oh, I know Mr. Hughes very well, he's brilliant.' She said, 'he's plenty smart.' That's what she said, 'plenty smart.' " She denied that either of them had used the word "foxy". When asked if the witness had not said he was "smart as a steel trap", she replied: "I might have said that. * * * What I wanted to convey was that he was brilliant." The witness testified that Mr. Hughes, the president of the appellant company, was an old friend of her husband's and hers, and when he came into her office at the State Roads Commission a few days later, she remarked to him that "someone on the jury said to me that you were very smart, and I agreed * * *." She "passed on to him what I thought was a compliment." She also testified, in regard to her conversation with Mrs. Fisher: "It was only idle talk on the part of two women, and I realize now it was not the thing to do."

Mr. Tilley, office manager of the appellant and a nephew of Mr. Hughes, testified he was present during the conversation between Mrs. Marling and Mr. Hughes. Mrs. Marling said to Mr. Hughes "something to the effect that, 'Incidentally I have a friend on the jury down there, and she says Mr. Hughes looks like a foxy little character, or a foxy little man, * * * I told her you were a very clever man'."

Mrs. Fisher testified that she had told Mrs. Marling about serving on the jury, and said to her: "We are on a very interesting case, * * * and also one thing, they have two brilliant lawyers there. That was all I said." A few days later her husband received a telephone call from Mrs. Marling, telling him something about the incident, and he charged the witness with "talking about the case", which she denied. "I said to my husband, I couldn't possibly say Mr. Hughes was a brilliant man, because I hadn't heard his voice until today. * * * meaning yesterday—yesterday is the first day he was put on the stand, and that's the only time I heard his voice." Her conversation with Mrs. Marling was on Saturday. When she saw her again on Wednesday after the conversation with her husband, she told Mrs. Marling: "Honey, I couldn't tell you anything about the man, because I never seen him in my life until last Monday when I came into court, and yesterday was the first time he was on the stand. So, she apologized to me, and, of course, told me they called her from the office."

The appeal from the judgment properly presents the question of the correctness of the court's ruling on the motion for mistrial, even if we assume that after a trial is concluded a juror may not impeach his verdict, *Williams v. State*, 204 Md. 55, 65, and that the point would have been waived by failure to object, after knowledge of the alleged misconduct, prior to the time the jury retired. *Brawner v. Hooper*, 151 Md. 579, 593. It is true that it is highly improper for jurors to discuss with outsiders a case on trial before them, but as stated in *Rent-A-Car Co. v. Fire Ins. Co.*, 163 Md. 401, 408, "Not every trivial act on the part of a juror during the course of the trial amounts to such misconduct as requires the withdrawal of a juror and the continuance of the case. * * * the

misconduct must be such as to reasonably indicate that a fair and impartial trial could not be had under the circumstances." It was also said (p. 409) : "The better rule in such cases would seem to be that such questions be left to the sound discretion of the trial court, whose decision should only be disturbed in those cases where there has been a plain abuse of discretion, resulting in palpable injustice. Especially should this be true in cases where there is conflict of evidence as to whether the act constituting the alleged misconduct in fact occurred." In that case, it was held that, although a juror received information in a casual conversation with a witness, as to the situs of two previous trials of the same case and their outcome, there was not a sufficient showing of prejudice and no abuse of discretion in denying the motion for mistrial.

The rule laid down in the *Rent-A-Car Co.* case finds general support in the cases elsewhere. See *Lewis v. United States*, 295 F. 441 (C. C. A. 1st), *cert.* denied, 265 U. S. 594; *Weaver v. Gale*, 91 N. E. 2d 808 (Ohio App.) ; *In re Ohio Turnpike Commission*, 131 N. E. 2d 397, 403 (Ohio) ; Note, 86 A. L. R. 928.

In the instant case the trial court might well have believed Mrs. Fisher's version of the conversation, since at the time it took place Mr. Hughes had not taken the stand. But if it be true that Mrs. Marling characterized Mr. Hughes as "brilliant", or a "very clever man", that could hardly be considered prejudicial, and there was no testimony that she said anything else about him. The characterizations "smart" or "foxy" were attributed to the juror, who was doubtless entitled to her own opinion. In any view of the case, the alleged information supplied to the juror was not reasonably calculated to influence the juror's verdict against the defendant company or Mr. Hughes, and there is clearly no showing of a palpable injustice.

The case of *Panko v. Flintkote Co.*, 80 A. 2d 302 (N. J.), relied on by the appellant, is clearly distinguishable. There it was shown that after the juror had discussed the case with his brother-in-law, a call was put in to ascertain the amount of insurance carried by the defendant, and the court felt that it was a fair inference that this information was passed on to

the juror and directly affected his verdict. Of course, the courts do not require proof of actual influence where inadmissible evidence, of a character so prejudicial that it would call for a mistrial if offered in court, reaches a juror through clandestine means. Cf. *State v. Kociolek,* 118 A. 2d 812 (N. J.). That is not the situation in the instant case. We find no abuse of discretion in the denial of the motion.

*Judgment affirmed, with costs.*