## THOMAS W. HAGAN ET UX. *v.* WASHINGTON SUBURBAN SANITARY COMMISSION

[No. 365, September Term, 1973.]

*Decided February 14, 1974.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*John J. Pyne,* with whom were *McChesney & Pyne* on the brief, for appellants.

*Albert D. Brault,* with whom were *Brault, Scott & Brault* on the brief, for appellee.

Lowe, J., delivered the opinion of the Court.

This appeal comes to us following entry of two judgments *n.o.v.* by Judge Perry G. Bowen, Jr., Circuit Court for Calvert County, upon jury verdicts in favor of the appellants Thomas W. and Patricia H. Hagan. Appellants originally filed a declaration in the Circuit Court for Prince George's County in December of 1970 against four defendants, A. A. Carozza, T/A Carozza Construction Company, A. A. Carozza, T/A Iverson Mall Shopping Center, Board of County Commissioners of Prince George's County and the appellee here, Washington Suburban Sanitary Commission.

The Board of County Commissioners was dismissed as a defendant upon motion raising preliminary objection on the ground of governmental immunity. The case was removed to the Circuit Court for Calvert County and defendant A. A. Carozza, T/A Carozza Construction Company, was voluntarily nonsuited. Prior to trial, three other defendants were named as joint venturers with defendant, A. A. Carozza. The four joint venturers were collectively referred to as Iverson Mall Shopping Center, Joint Venture, (Iverson).

The case was tried on February 8th, 1973 against Iverson and the appellee, Washington Sanitary Commission. Both defendants filed timely motions for directed verdicts upon which the trial judge reserved ruling.

The jury returned a verdict for appellants totalling sixty thousand dollars. The court granted both defendants' motions setting aside the verdict.

In entering the judgments *n.o.v.*, the court found contributory negligence as a matter of law on the part of the appellant, Dr. Hagan, and also found as a matter of law that there was no evidence of primary negligence on the part of the appellee.

Pending appeal, a partial settlement of appellants' claim was reached between appellants and Iverson in accordance with the provisions of the Uniform Contribution Among Joint Tort-Feasors Act, Md. Code, Art. 50, §§ 16 *et seq.* The appeal was dismissed as to Iverson and reaches us now only

against Washington Suburban Sanitary Commission (the Commission).

The rule that guides our consideration of the question before us has been stated repeatedly but no more succinctly than in *Smith v. Bernfeld*, 226 Md. 400, at 405:

> "The general rule by which the sufficiency of the evidence is to be tested when this Court is reviewing a motion for a directed verdict or judgment *n.o.v.* for the defendant is well established as being that this Court must resolve all conflicts in the evidence in favor of the plaintiff and must assume the truth of all evidence and inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right to recover — that is, the evidence must be viewed in the light most favorable to the plaintiff."

Appellants' suit results from Dr. Hagan's fall over a fire hydrant as he left a restaurant in the Iverson Mall. The hydrant was located in the middle of the sidewalk between the edge of the curb and the building housing the restaurant. It was directly in line with the hinged side of one of four glass doors which opened outward and through which the Doctor chose to exit. After taking one or two steps he fell over the thirty-three inch, red and white fire hydrant.

The Commission originally installed the fire hydrant upon an application by Iverson in 1961 submitted with plans showing only prospective road, sewer and water installations. No proposed buildings were shown. After initial installation of the hydrant in accordance with those plans, the following events occurred *seriatim.*

The County surfaced the road and poured a concrete sidewalk seven feet wide. Just before or just after the surfacing, the hydrant was relocated and placed, presumably by the Commission, in the dirt beside the new sidewalk (away from the road). No building had yet been erected in the vicinity.

Iverson then built the mall which included the building

housing the restaurant. At the same time, it extended the sidewalk from the point at which the County sidewalk stopped, back to the building wall, a distance of approximately eight feet. The extension left the hydrant approximately in the center of a fifteen foot wide concrete sidewalk.

Appellants concede "that there can be no liability in negligence for a condition that is obvious even though it could produce injury." [1] Thus, they abandon any charge of wrongdoing in the initial installation or the pre-accident relocation of the hydrant. Nor do we find anything in the record to show that appellee used less than reasonable care in installing or relocating the hydrant.[2]

To take their case to the jury, appellants carried the burden of providing legally sufficient evidence that: the fire hydrant constituted a hazard; appellee had knowledge that it constituted a hazard; and appellee had a responsibility to protect appellants from that hazard.

The hydrant's location in the middle of the walkway is not the hazard relied upon by appellants. Rather they argue that its unique proximity to the door used by Dr. Hagan caused him to be "suddenly confronted" as he emerged from the restaurant. Appellants' novel theory of sudden confrontation is gleaned from *Chalmers v. Great Atlantic and Pacific Tea Company*, 172 Md. 552, and from dicta in *Morrison v. Suburban Trust Company*, 213 Md. 64.

This theory, that an otherwise innocuous object may be

---

1. Appellants cite Evans v. Hot Shoppes, 223 Md. 235; Morrison v. Suburban Trust Co., 213 Md. 64; and Manor Country Club v. Richardson, 253 Md. 319. They go on to state, "Had Dr. Hagan fallen over the protruding arm of the fire plug on his way into the shopping center, or while simply walking down the sidewalk and parallel to the entrance way — or, indeed, after exiting from any of the other three exit doors, the plug would have been obvious and the appellee could be held as a matter of law to have violated no duty."

2. In locating fire hydrants, appellee is primarily concerned with their accessibility to fire equipment in a location where they would be readily discernible to firemen in an emergency. In selecting such locations, the commission is expected to use ordinary and reasonable care to assure that hydrants are not dangerous to pedestrian or vehicular traffic. If the primary purpose of a fire hydrant is to be served, it must be placed in, on, or near a public way for accessibility to vehicular fire equipment and proximity to the structures that it is intended to protect.

transformed into an actionable danger by its proximity to one unaware of its existence, is as yet novel, although not of recent origin. As a result of its limited applicability, the theory has been infrequently raised, and guidelines for its use are de minimis. It is apparent, however, that surprise is a requisite element for such a Jekyll to Hyde transformation.

Although fascinating in an appropriate factual setting, the theory of sudden confrontation is strained when applied here. A fire hydrant in the middle of a sidewalk, highly illuminated, and visible seven or more feet from an all glass exit is not so perilously placed as suddenly to confront a reasonably prudent pedestrian emerging from a restaurant to a public way.

Appellants also failed to show that appellee knew or had reason to know that any danger existed, if indeed it did. The record reveals no actual notice of physical changes made by others. Neither the door's location nor the erection of the building were under the supervision or control of appellee. Both occurred well after the final location of the hydrant. In addition, testimony was elicited that since the erection of the building, two million people had passed through the store's portals without injury. The Commission was never informed of an accident or injury, nor even of a complaint that the hydrant constituted a danger.

Similarly, appellants made no showing that appellee should have foreseen the construction or design of the building which allegedly made the otherwise innocuous hydrant imminently dangerous to certain pedestrians. We are unable to place upon appellee the burden of continued surveillance to determine when a hydrant's environment becomes so altered as to transform it from a device of safety to an instrument of peril. So onerous a task would require eternal vigilance in an attempt to perceive the imperceptible. The rule of reasonable care must be considered, not in the light of the accident that happened, but with reference to what ordinary prudence should have anticipated as likely to happen.

Nor can appellant rely exclusively upon the movement of

the hydrant by appellee after the accident occurred to meet his burden of showing appellee's prior knowledge that a hazard may have existed. Testimony that, after the accident, appellee moved the hydrant was admitted over objection on the authority of *Blanco v. J. C. Penney Co.*, 251 Md. 707, which in turn quoted and relied upon *American Paving and Contracting Co. v. Davis*, 127 Md. 477. In *American Paving*, at p. 484, the Court of Appeals approved the admission of evidence that the defendant or his agents had put a screen over the smokestack of a steam shovel after sparks had ignited plaintiff's home, ". . . as reflecting upon the question whether the defendant had exercised proper care and caution to avoid injury to the plaintiff's property." Quoting further from *American Paving & Contracting Co. v. Davis, supra, Blanco* goes on to say, at p. 710, ". . . this evidence was clearly admissible, not only for the purpose of showing that the fire was caused by the sparks from the steam shovel, but also as tending to show negligence on the part of the defendant." Both *Blanco* and *Davis* agree that such evidence cannot be accepted as an admission of liability.

The question here is whether such subsequent act is legally sufficient [3] evidence to permit a jury to infer that appellee had prior knowledge of the danger. If so, evidence of subsequent safety measures alone would be adequate to prove not only the existence of a hazard but also defendant's prior knowledge of its existence. This is not the law in Maryland. As stated in *Blanco*, such evidence cannot be used as an admission of liability, it cannot give birth to a hazard where none exists, nor impart a knowledge that is otherwise absent.

The purpose of the admission of such evidence must be carefully defined because of its nature. Like all inferential evidence it admits of varying explanations not all of which

---

**3.** "The words 'legally sufficient' have significance. They mean that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value." Vernon v. Aubinoe, 259 Md. 159, 169, quoting Fowler v. Smith, 240 Md. 240, 247.

are relevant and some of which may be prejudicially misleading. The phrase "to show negligence" as used in *Blanco, supra,* must be interpreted as applying to the third element of negligence listed above, *i.e.* whether appellee owed a duty to the appellants to correct the condition *if* it was a hazard, and *if* appellee was charged with knowledge that it was hazardous.

To permit a corrective act after the fact to imply knowledge of a dangerous condition before the fact contradicts both logic and reason. It would make such an act tantamount to an "admission of liability" which *Blanco* expressly precludes.

We need not elaborate upon the obvious, although highly important, public policy reasons requiring strictness in the admission of such evidence. Suffice to say, the reason for our hesitancy to admit such evidence freely is not that it lacks probative significance but rather that we recognize the very urgent policy against discouraging the taking of safety measures.

Evidence that the hydrant was moved after Dr. Hagan's fall was properly admitted for the two limited purposes recited by appellants, "to show who had actual control over the plug and to show what was feasible to correct the condition prior to the accident." It cannot, however, now serve to fill the evidentiary void of appellee's knowledge of the existence of a latent danger prior to the accident.

This brings us to the question of contributory negligence. Even assuming the existence of negligence on the part of appellee, the commission, or others,[4] appellant, Dr. Hagan, seems to be the principal, if not the exclusive, author of his own misfortune.

In proceeding onto a public area an ordinarily prudent

---

4. Weisner v. Mayor and Council of Rockville, 245 Md. 225, holds that, though not an insurer, the governmental body having the duty to maintain public streets and sidewalks owes a duty to keep them free of dangerous conditions. There was a voluntary nonsuit of Prince George's County, the entity constructing a portion of the sidewalk. The appeal was dismissed against Iverson. No duty of maintenance of the sidewalk area is attributed to appellee here.

person should anticipate impediments to his progress as a fact of modern life, *e.g.* public lighting and utility fixtures, trash containers, mail boxes, fire alarms, call boxes, and fire hydrants. This was not an area where one had the right to assume that no impediment would exist.

The doors were glass, the entire area amply illuminated and the fire hydrant clearly marked. The hydrant was not obscured, but centered in the public way. It might be considered more a nuisance than a patent danger. Dr. Hagan's sudden confrontation with the hydrant was occasioned by his own inattention. Indeed, he testified that he did not see the three foot tall, red and white fireplug, until after he fell. He admitted he did not know why he didn't see it and stated only that he was looking for traffic on the road over fifteen feet away even before he left the restaurant.

"Where it is manifest to the court upon the plaintiff's own showing in the uncontradicted evidence in the case that there is no rational ground upon which a verdict can be based for the plaintiff, it becomes the duty of the court to direct a verdict for the defendant, or, as in this case, grant a motion for a judgment *n.o.v.* in favor of the defendant." *Lusby v. First National Bank,* 263 Md. 492, 506.

> *Judgment in favor of Washington Suburban Sanitary Commission affirmed; costs to be paid by appellants.*