JOSEPHINE VACCARO ET AL. *v.* LEXLY W. CAPLE

[No. 13, September Term, 1976.]

*Decided November 3, 1976.*

The cause was argued before DAVIDSON, MELVIN and LISS, JJ.

*Bayard Z. Hochberg,* with whom were *Philip S. Marano* and *Michael J. Doxzen* on the brief, for appellants.

*Robert H. Bouse, Jr.,* with whom were *Frederick G. Savage* and *Anderson, Coe & King* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

This case might well be called the "Case of the Resurrected Jurors." The appellant Josephine Vaccaro,

infant, was a passenger in an automobile which was involved in a collision with a vehicle operated by Lexly W. Caple, appellee. Suit was filed by appellant and her parents, a jury trial was held in the Circuit Court for Carroll County (Weant, J., presiding), and at the conclusion of all the evidence, verdicts were returned in favor of the appellants. Considering the awards to be grossly inadequate, appellants filed within the time allowed a motion for a new trial, alleging that their right to challenge peremptorily prospective jurors had been impaired. The court after a hearing denied the motion, and it is from the refusal of the court to grant a new trial that this appeal was taken.

It is not necessary for us to give a detailed recitation of the facts of the accident or damages sustained, as this appeal raises only a legal issue — whether the trial court erred by denying appellants' motion for a new trial.

The record discloses that when the case was called for trial, counsel for the parties were each provided with a jury list containing thirty names, and that after *voir dire,* the clerk of court struck a number of the names by lot. In each instance, lines were clearly marked through the names and addresses of those jurors struck by the clerk. Counsel for the defense also drew a line through the names and addresses of those jurors he wanted to strike peremptorily. Appellants' counsel placed a check mark opposite the names of his peremptory challenges but did not mark through their names and addresses — with the exception of one juror whose name he did mark through and who was actually stricken from the panel. It being the practice in the Carroll County Circuit Court to effectuate peremptory challenges by crossing out the names and addresses of those jurors to be excluded, the court inadvertently did not strike from the panel three of the jurors counsel for appellants had intended to be challenged. The jury was then called by name and seated in the presence of counsel. They were again called by name in the presence of counsel when the clerk took count of the jury. The jurors, including the three intended to be stricken by appellants, were then sworn, and the trial proceeded to conclusion. Counsel for appellants contends

that he did not discover the error until the day after the verdict was rendered; and it is conceded that neither the court, the clerk, nor opposing counsel had knowledge of the apparent mistake.

The sole issue raised by this appeal — whether the trial court erred by denying appellants' motion for a new trial — has two facets: First, were the appellants deprived of the right to peremptory challenges allowed them by statute and rule of court; and secondly, did the appellants waive their right to the peremptories by failing to object to the composition of the jury until after a verdict was rendered?

There is no disagreement as to the Maryland law governing peremptory challenges. Maryland Code (1974), Courts and Judicial Proceedings Art., § 8-301, provides:

"§ 8-301. Peremptory challenges.
    (a) Cases involving death, life imprisonment, or 20 years or more. — * * *
    (b) Other cases. — In all other cases, each party is permitted four peremptory challenges; all defendants are considered a single party for this purpose."

Maryland Rule 543 (1971 Repl. Vol.) provides:

"Rule 543. Jury Selection, Strikes, Challenges, etc. . . . Law
  a. Petit Jury.
    * * *

    3. [Peremptory Strikes — Number] Each party may peremptorily strike, without cause, four persons from the lists of twenty provided for in paragraph 1 of section a. of this Rule, and the remaining twelve persons shall thereupon be immediately empaneled and sworn as the petit jury in the action.
    * * *

The right to challenge prospective jurors peremptorily has developed through the common law, case law, statute, and rule of court. The historical background of that right was discussed in depth by Judge Moylan of this Court in *Spencer v. State,* 20 Md. App. 201, 314 A. 2d 727 (1974). In the earlier case of *Pearson v. State,* 15 Md. App. 462, 291 A. 2d 167 (1972), Judge Gilbert, now Chief Judge of this Court, explicated the importance of the peremptory challenge as a means of guaranteeing a fair and impartial jury. While most of the cases cited in these opinions refer to criminal matters, there is no difference in the purpose and effect of the peremptory in a civil or a criminal case.

The function of the peremptory challenge is to eliminate extremes of partiality and to assure the parties that the case is decided solely on the basis of the evidence. The Supreme Court in *Swain v. Alabama,* 380 U. S. 202, 218, 85 S. Ct. 824, 835, 13 L.Ed.2d 759, 771 (1965), discussed its "raison d'etre":

> " . . . peremptories were and are freely used and relied upon in this country, perhaps because juries are drawn from a greater cross-section of a heterogenous society. The *voir dire* in American trials tends to be extensive and probing, operating as a predicate for the exercise of peremptories, and the process of selecting a jury protracted. The persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by a jury. See *Lewis v. U.S.,* 146 U.S. 370, 376. . . . The denial or impairment of the right is reversible error without a showing of prejudice. . . . [citations omitted] . . . 'For it is, as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose.' *Lewis v. U.S., supra,* at 378 [36 L. Ed. 1011, 1014, 13 S. Ct. 136]."

However, freedom to exercise the right of peremptory challenge is not absolute; and where, as here, the appellants

have failed to use due diligence, they will be held to have waived the right. We shall affirm.

The rule is, we are convinced, that when a juror who might otherwise be disqualified for cause is permitted to serve on a jury because of the failure of the aggrieved party to use due diligence in discovering the irregularity, a judgment of that jury will not be disturbed. It seems to us even less justifiable — in such an instance — where the challenge is a peremptory one, which could have been exercised for any arbitrary reason or for no reason at all. As stated in *Brice v. State,* 264 Md. 352, 366, 286 A. 2d 132, 139 (1972):

> "Hunch, passing impression, appearance of the prospective juror, or any other consideration may lead to the exercise of the peremptory challenge and no inquiry may be made in regard to why it is exercised."

Under these circumstances, i.e., with the reason, the motive — the "why" behind the particular peremptory being known only to the party who exercised the right — and the factor of association being present only to him, it should be clear why the rule requiring due diligence by that party is at least as, if not more, justifiable in the peremptory challenge as it is in the challenge for cause.

Appellants point out that waiver is the voluntary surrender of a right requiring both knowledge and intention and that they had neither knowledge nor intention to waive in this case. But a waiver may occur because a party is estopped by his own conduct; i.e., by a failure to exercise due diligence. Our Court of Appeals in *Benson v. Borden,* 174 Md. 202, 198 A. 419, 427 (1938), said, at 219:

> "In this country 'waiver' and 'estoppel' are often used synonymously by courts and text writers . . . . [T]he demarcation between 'waiver' and 'estoppel' is lucidly delineated in 40 *Cyc.* 255, as follows: 'While waiver belongs to the family of estoppel, and the doctrine of estoppel lies at the foundation of the law of waiver, they are nevertheless distinguishable

terms. * * * Waiver is the voluntary surrender of a right; *estoppel is the inhibition to assert it from the mischief that has followed.* Waiver involves both knowledge and intention; estoppel may arise where there is no intent to mislead. Waiver depends upon what one himself intends to do; estoppel depends rather upon what he causes his adversary to do. Waiver involves the acts and conduct of only one of the parties; estoppel involves the conduct of both. A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position; an estoppel always involves this element. * * * A waiver may be created by acts, conduct or declarations insufficient to create a technical estoppel.' " (emphasis added).

In this case, the failure of appellants to exercise due diligence prevented the court from correcting the error which occurred.[1] If the motion for new trial requested by appellants were granted, it would have required the defense to re-try a case already completed.

The Court of Appeals had before it the same issue in *Lee v. Colson,* 277 Md. 599, 356 A. 2d 558 (1976): A juror whom counsel claimed had been stricken peremptorily was sworn inadvertently on the jury which was empaneled, served during the taking of testimony, and retired for deliberation as to verdict. While the jury was out, counsel for appellant discovered the error but failed to call it to the court's attention. Some two hours later, the jury returned a verdict unfavorable to the appellant. A motion for a new trial was filed wherein for the first time appellant disclosed to the court the inadvertent seating of the peremptorily challenged juror. The motion was denied, and the Court in affirming said:

> "[I]t appears to be an accepted proposition that a waiver results from failure to object to an

---

1. At the motion for new trial, in discussing the error of seating a juror intended to be stricken, the trial judge stated that the situation "happened one other time in this court and that was quite a few years ago and the point was brought to the court's attention before we started the trial and we took an entirely new panel and started over again."

irregularity in the selection of a petit jury prior to the return of an unfavorable verdict."

The Court of Appeals has had similar issues before it on numerous occasions: In the early case of *Johns v. Hodges*, 60 Md. 215 (1883), a defendant in a contested will case discovered, after adverse verdict, that two of the jurors who sat in the case were under the required age. In affirming, the Court at 220, 222 said:

> "It was competent for the defendant to have made the proper inquiries, and after having satisfied himself on the subject, to have made the objection before the juror was sworn, but this he neglected to do. He waited until he had lost his case. If a party to a suit may omit to make such inquiries until after a verdict has been rendered against him, and may then set it aside on discovery and proof of the existence of a good cause of challenge against any one of the jury, it would introduce an additional element of uncertainty in the administration of justice, and lead in many cases to great and unnecessary delay and expense.
>
> * * *
>
> The fact that the party was not aware of the disqualification when the jury was empanelled is not material; because he *might* have known it." (emphasis in original)

*Hansel v. Collins*, 180 Md. 100, 23 A. 2d 1 (1941), held that a judgment would not be set aside on the ground that one of the jurors was disqualified because of non-residence even where the complaining party was unaware of the disqualification, if he *might* have known of it.

In *Young v. Lynch*, 194 Md. 68, 69 A. 2d 787 (1949), a deputy sheriff mistakenly served a summons for jury duty on the brother of a prospective juror. The improperly summonsed juror participated in the trial and with the other

jurors returned a verdict, the mistake being discovered some time later. The Court in affirming said, at 72:

> "If the fact had been of any consequence to defendant, it could have been learned by looking at the jury before they were sworn. The evidence shows that the mistakes occurred without fraud or dishonesty on the part of the juror or any one else, without injury to defendant, and without effort on defendant's part to prevent or correct them."

In *Alexander v. R.D. Grier & Sons Co.*, 181 Md. 415, 421, 30 A. 2d 757, 760 (1943), the trial court was reversed because of its refusal to ask certain questions on *voir dire*. The Court, however, distinguished the case:

> "This case is to be distinguished from those cases in which the alleged disqualification of a juror was raised for the first time after verdict found. In such cases it is required that the party, seeking to set aside the verdict, satisfactorily establish that he did not know, and in the exercise of reasonable diligence could not have known of the disqualification."

Decisions in other jurisdictions support the view that a party may waive a right to peremptory challenges by failing to use due diligence. In *Acosta v. Texas*, 522 S.W.2d 528 (1975), while polling the jury following a murder conviction, it was discovered that one of the peremptorily struck jurors had inadvertently served on the jury. The Court citing an earlier Texas case said at 529:

> ". . . [I]t is the duty of the parties to see that, as impaneled, the jury box does not contain a juror who has been challenged by striking. It is undisputed that Mrs. Byrd's name was called and she was seated in the jury box, and the court inquired if there were any objections to the panel as

selected, to which appellant answered, 'no objection, your honor.' " [2]

In a Kentucky case,[3] a statute required a jury panel of not less than 24 nor more than 30 jurors from which a venire of 18 names was to be drawn — from which the trial jury was to be selected. Counsel filed an affidavit contending that he had discovered the day after the trial that only 21 jurors were listed, and therefore a full statutory panel had not been used. The Court in discussing the effect of the error said:

"Appellant's counsel took for granted there was a full panel instead of making inquiry of the court at the time the case was called to trial. At that time had he moved for a statutory panel there can be but little doubt he would have obtained it. By waiting until after the trial to bring the matter to the court's attention, he waived it. Although he did not discover this error until after the trial, reasonable diligence upon his part would have revealed it at the time the jury was empaneled."

In an Indiana case,[4] appellant contended on appeal that jurors who served on his case had not been selected in the manner prescribed by statute and that he did not discover this irregularity until the date of filing his motion for a new trial. In affirming the judgment below, the Court said:

"However, it is well settled that a party may waive the provisions of these statutes. . . . Parties who demand the right to have the provisions of these statutes complied with have a duty to use diligence in ascertaining whether they have been followed. In the event there has been an irregularity they must make timely objection to the

2. *See,* Suchan v. Henry's Farm Sales, Inc., 97 Ida. 78, 540 P. 2d 263 (1975); Finck v. Hoskins, 94 Ida. 524, 492 P. 2d 936 (1972); Brown v. Marker, 410 P. 2d 61 (Okla. 1965).

3. Louisville Baseball Club v. Hill, 291 Ky. 333, 164 S.W.2d 398, 401 (1942).

4. Kark v. Central Greyhound Lines, 85 N.E.2d 277, 279 (1949).

trial court. It is too late to raise the objection made here after an adverse verdict has been returned."

In a later Indiana case, *Sturrock v. State*, 96 N.E.2d 226, 227 (1951), the state Supreme Court refused to reverse a murder conviction on the ground that an ineligible, non-resident juror had served on the panel. The Court held:

"The juror's non-residence was unquestionably a ground for challenge. But the fact of his non-residence was known to appellant and her attorneys *or was discoverable by the exercise of reasonable diligence before the verdict.* Under such circumstances the objection was waived by the appellant's failure to make it before an unfavorable verdict had been returned." (citations omitted, emphasis added).

Our review of this record convinces us that the appellants did not exercise due diligence in the implementation of their right to peremptory challenges. Counsel was unfamiliar with the practice in the Carroll County Circuit Court which by custom required attorneys to indicate their peremptory strikes by marking lines through the names and addresses of those persons whom they wished to exclude; counsel instead placed a check mark opposite their names.[5] Members of the jury were called by name and seated in the presence of counsel twice: when they were first seated in the jury box and when the clerk took count of the jury. Trial continued over a period of a day and a half. Even a cursory examination of the jury list would have disclosed the error, and that information would have permitted the trial court to take appropriate measures to correct it. It was not until after the verdict had been rendered that appellants checked the jury list. The information they then discovered was available to them before the trial began. To permit the trial to be aborted and require the case to be re-tried would result in unncessary delay and expense.

---

5. We are advised that this practice differs in various jurisdictions in the State. We call this to the attention of the Rules Committee of the Court of Appeals. A uniform rule might well protect the unwary.

In this bicentennial year, it is not, we believe, inappropriate to call attention to Thomas Jefferson's caution that "eternal vigilance is the price of liberty." No less a price is required of a litigant who seeks to avail himself of the procedural or substantive rights to which he is entitled.

*Judgments affirmed.*
*Costs to be paid by appellants.*