## TROMBERO *v.* McWILLIAMS

[No. 123, September Term, 1959.]

*Decided February 12, 1960.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*Marshall A. Levin,* with whom was *Harry O. Levin* on the brief, for appellant.

*Foster H. Fanseen,* with whom were *Ginsberg & Ginsberg* and *Hyman Ginsberg* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

A plaintiff, who is dissatisfied with the amount of damages awarded him by a jury in the trial below, has appealed. He brought suit in the Superior Court of Baltimore City for damages to his automobile and alleged personal injuries resulting from an automobile accident that occurred on January 30, 1957. The appellee-defendant admitted liability. At the conclusion of the trial, the jury rendered a verdict in favor of the plaintiff for the amount of damages to his automobile, but failed to award him anything for his alleged personal injuries, doctor's and hospital bills and other expenses allegedly incurred as a result of the accident.

It will be noted from the above that the collision involved in this suit occurred on January 30, 1957. It appears that the plaintiff received, in May of 1958, another injury to the same leg that he complained of in the instant case, and also an injury to his stomach. In his declaration, the plaintiff had alleged that he had received serious and permanent injuries as a result of the collision with the defendant. In his direct examination, the plaintiff, in response to an inquiry from his counsel, stated that he had had no other "injuries of any kind" since 1945. On cross-examination, he was reminded of this statement and he repeated that he had had no serious injury since 1945. Counsel for the defendant then asked him if he had not been "right badly hurt" when he was standing by his car at the Chesapeake Cadillac garage and was pinned between the bumper and the hood of an automobile. [This was the injury of May, 1958.] The plaintiff answered, "that was after this accident here." After a few more questions, counsel for the plaintiff moved to strike all of the questions and answers relating to the injury of May, 1958, unless the opposing counsel "tells us how he intends to tie that up with the claim in this case." The trial judge instructed counsel for

the plaintiff to make a note of the motion, and, if counsel for the defendant did not "connect" the testimony up more definitely, he would strike it out. Defendant's counsel then called the plaintiff's attention to the fact that he had requested an item of expense for whirlpool baths and asked if the whirlpool baths were taken as the result of the injury received in the collision with the defendant. The plaintiff replied they were. Defendant's counsel then asked if the plaintiff had not sworn in "his deposition" that he had taken some of the baths as a result of the injury received in May, 1958. Plaintiff's counsel objected and was overruled, but the question was not answered. Shortly thereafter, plaintiff was asked the name of the man who was driving the car that injured him in the May, 1958, accident, and he replied that he did not know. Defendant's counsel then asked if the plaintiff had not employed counsel to prosecute a claim against this man for injury to his leg. Counsel for the plaintiff asked leave to approach the Bench, and the question was withdrawn. Counsel for the plaintiff then approached the Bench and made a motion for a mistrial, which was denied, the court again stating to counsel that if it developed that the testimony had "no connection with the injury of 1957" he would so instruct the jury. Several times thereafter reference was made to the injury received by the plaintiff in May, 1958, but it would serve no useful purpose to set forth this testimony in detail. Suffice it to say that we have read it in detail and carefully considered it as it is stated in the record extract. In his charge to the jury, the trial court told the jury that he was granting the motion to strike all testimony "relating to this accident on May 5, 1958," and specifically instructed the jury "to ignore" the same. The appellant contends that the damage to him in having this testimony before the jury was prejudicial, and the mere striking it out by the court with an instruction to ignore it failed to neutralize its ill effects and he is entitled to a new trial.

As a general rule, the choice of measures to insure a fair and unprejudiced trial is left to the sound discretion of the trial judge, and it is only in exceptional cases that its choice will be reviewed in this court. *Nelson v. Seiler,* 154 Md. 63,

72, 139 A. 564. Ordinarily, the striking out of evidence with an instruction to the jury to disregard the same, is sufficient to neutralize the effect of admitting testimony that is inadmissible [or is subsequently shown to have been inadmissible] ; and it is only, as stated above, in unusual and exceptional cases that the discretion of the trial court with reference thereto will be disturbed. We think the case comes well within the scope of such decisions as *State, for Use of Thompson v. Emerson & Morgan Coal Co.*, 150 Md. 429, 443, 133 A. 601, and *LaFontaine v. Wilson to Use of Agast*, 185 Md. 673, 685, 45 A. 2d 729, where evidence was admitted originally and later stricken out, and it was held not to be prejudicial error. Cf. also *Lusby v. State*, 217 Md. 191, 194-197, 141 A. 2d 893, a criminal proceeding.

The appellant further contends that "the unfair use of a highly emotional issue, namely, syphilis thirty-two years prior to the trial, led to a prejudicial and invalid verdict." His argument here is more in the nature of an argument on a motion for a new trial, which, of course, should be directed to the trial court. If the verdict were inadequate, that could have served as the basis for such a motion. *Havens v. Schaffer*, 217 Md. 323,[1] 142 A. 2d 824. He does not here point out specifically any inadmissible evidence that was admitted and prejudicial, nor any admissible evidence that was rejected.

The appellant, himself, established that he had contracted syphilis many years ago as a young man. Naturally he and his doctors were cross-examined concerning the same. The appellant now claims that "[c]ounsel for appellee also let hang an implication that one of *appellant's* doctors was an authority on the subject of syphilis and that he sided with the position taken by appellee's counsel whereas such doctor was *not* an authority on this subject, nor was there any claim that

---

1. The case, in a nutshell, presents a situation where the jury, after the defendant had admitted liability, rendered a verdict for exactly the amount of damages to the plaintiff's automobile, but evidently concluded that the plaintiff had failed to prove his personal injuries were the result of the defendant's negligence.

he was, *nor did he, in any way, side with appellee's position."* Clearly, a matter of this kind involves the procedure and tactics of the trial table, and is not one for appellate review in the absence of prejudicial hampering or retarding of appellant's counsel in clearing the matter up [assuming that there were any confusion on the subjects involved]. If counsel for the appellee created any false or improper "implication" concerning the appellant's doctors, the record fails to disclose any interference with appellant's counsel, who was at perfect liberty to propound any proper question or questions to any of the witnesses in order to dissipate any confusion that may have existed and to clarify any matter or subject that needed clarification.

Finding no error in the trial court's rulings, the judgment will be affirmed.

*Judgment affirmed with costs.*