604 A.2d 543

Audrey BRAXTON

v.

Kathleen T. FABER.

No. 1134, Sept. Term, 1991.

Court of Special Appeals of Maryland.

April 14, 1992.

392

Darlene Wright Powell (Clayton J. Powell, Jr. and Powell and Powell, P.C., on the brief), Greenbelt, for appellant.

Paul H. Ethridge (McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellee.

Argued before WENNER, DAVIS and MOTZ, JJ.

DAVIS, Judge.

The appellant, Audrey Braxton, seeks review of the proceedings in the Circuit Court for Montgomery County before the Honorable William C. Miller, presiding with a jury. The jury returned a verdict in favor of the appellee, defendant below, as to liability. The appellant presents the following issues for our review:

1. Whether the trial court committed error throughout the trial.
2. Whether the trial court was biased against the appellant and her counsel.
3. Whether the jurors were prejudiced and guilty of misconduct.
4. Whether the trial court abused its discretion.
5. Whether the appellant has been denied her Constitutional right to a fair trial.

## FACTUAL BACKGROUND

On March 16, 1987, Audrey Braxton, appellant, was driving her automobile eastbound on Grovesnor Lane, in Rockville, Maryland, anticipating a merger with southbound traf-

fic travelling on Rockville Pike. The appellant came to a stop at the yield sign at the intersection of Grovesnor and Rockville Pike. The appellee also had been travelling eastbound on Grovesnor Lane and was stopped behind the appellant at the yield sign. After waiting for traffic to clear, the appellant moved out into the right-hand lane of Rockville Pike. The appellee also checked traffic on Rockville Pike, and when she perceived that all was clear, she too moved out into the right-hand lane of Rockville Pike behind the appellant.

After travelling approximately 100 yards in the right-hand lane, the appellant came to a complete stop. At the same time the appellee was attempting a lane change from the right lane to the center lane of Rockville Pike. The appellee, not realizing that the appellant had stopped, accelerated to make the lane change. The appellee looked up, saw the appellant, and applied her brakes but could not avoid the collision. The appellee contends that the appellant came to a complete and sudden stop for no apparent reason. The appellee further contends that, after driving to a nearby vacant lot to exchange insurance information, the appellant told her the reason she (the appellant) stopped was because she had changed her mind and had decided to make a lane change into the center lane of Rockville Pike.

## DISCUSSION

### Testimony of Medical Expert

The appellant first argues that the trial court erred in allowing the testimony of John Mizukawa, D.D.S. The appellant argues that, since Dr. Mizukawa is a maxillofacial [1] surgeon and the appellant testified that she had dysphasia, difficulty in swallowing, and did not allege temporomandibular joint (TMJ) injuries, the doctor's testimony was irrelevant. The appellant also objects to the testimony because the doctor was not named by the appellee in

---

1. Having to do with or relating to the jaw.

response to the appellant's interrogatory concerning expert witnesses who would be called to testify at trial. Thus, the appellant's counsel alleges they did not have ample time to prepare for examination of Dr. Mizukawa.

It is a time-honored rule of evidence that "in order to qualify as an expert, [one] should have such special knowledge of the subject on which he is to testify that he can give the jury assistance in solving a problem for which their equipment of average knowledge is inadequate." *Raitt v. Johns Hopkins Hospital*, 274 Md. 489, 500, 336 A.2d 90, quoting *Casualty Ins. Co. v. Messenger*, 181 Md. 295, 291–99, 29 A.2d 653 (1943); *see generally*, McLain, *Maryland Evidence*, § 702.1. Broad discretion is vested in the trial court with regard to expert testimony, and that discretion will not be disturbed on appeal absent an error of law or fact, a serious mistake, or a clear abuse of discretion. *Radman v. Harold*, 279 Md. 167, 170, 367 A.2d 472 (1977). We further note that objections attacking an expert's training, expertise, or basis of knowledge go to the weight of the evidence and not its admissibility. *Lahocki v. Contee Sand & Gravel Co.*, 41 Md.App. 579, 600, 398 A.2d 490 (1979), quoting *Baltimore Transit Co. v. Smith*, 252 Md. 430, 436, 250 A.2d 228 (1969).

From our reading of the record, we do not find that the appellant was unfairly prejudiced by the appellee's failure to list Dr. Mizukawa in her answers to interrogatories. Counsel for the appellant claims lack of time to prepare for trial, yet counsel participated fully in the deposition of Dr. Mizukawa, which lasted for more than two hours. Further, Dr. Mizukawa gave much of the same testimony at trial as he gave in his deposition. Additionally, the appellant was in possession of Dr. Mizukawa's report for some two-and-a-half years prior to trial.

The appellant also argues that sanctions are in order for the appellee's failure to name Dr. Mizukawa in response to appellant's interrogatories. Though the appellant thoroughly and accurately set forth the rules regarding

discovery and the failure to comply therewith, that determination is within the sound discretion of the trial court and will not be overturned absent an abuse.  There is no evidence in the record to suggest that the appellee's omission of Dr. Mizukawa's name was in any way willful or contumacious, and therefore we cannot say that the trial judge abused his discretion in not imposing sanctions.  Additionally, there is no evidence in the record to suggest that the appellant made a Motion for Sanctions or suggested at trial that sanctions were in order for this omission.

The appellant asserts that Dr. Mizukawa's testimony clouded the appellant's credibility as to both liability and damages.  We are unclear as to how the doctor's testimony had any bearing on the basic question of whether the appellant negligently stopped her car on Rockville Pike (*i.e.,* the basic question of liability for the accident).

Lastly, the appellant contends that the trial court erred in allowing Dr. Mizukawa to testify "in the middle of the plaintiff's [appellant's] case-in-chief." [2]  The court granted appellant's request to call Dr. Kevin M. Murphy in the middle of her testimony; she asserts, however, that the court erred in permitting Dr. Mizukawa to testify out of order.  Wide discretion as to the course of the trial is vested in the trial court, and the exercise thereof will not be reversed absent an abuse of discretion.  *Thrifty Diversified, Inc. v. Searles,* 48 Md.App. 605, 615, 429 A.2d 270 (1981).

As a practical matter, great latitude is often accorded professionals, including medical experts, who have been summoned to testify.  It is not uncommon, as a courtesy to these professionals, for a court to structure the order of testimony around their schedules.  We cannot say that in doing so the trial court abused its discretion.  *Fireman's Fund v. Bragg,* 76 Md.App. 709, 548 A.2d 151 (1988).  We

---

**2.** At trial, Dr. Mizukawa testified after all of the appellant's expert witnesses but before direct examination of the appellant was complete.

therefore hold that the trial court did not err in taking the testimony of Dr. Mizukawa out of the predetermined order.

## Judicial Prejudice/Bias

The appellant next argues that the trial court was racially biased against her and her counsel.[3] We pause, at the outset, to comment that the charges made by appellant on this appeal are grave indeed and should not be made, or disposed of, lightly. The factual basis primarily consists of asserted observations made by counsel of the gestures and body language of the trial judge. Appellant asserts that "[i]n the instant case, the judge's outbursts regarding the trial time, when coupled with the judge's overall demeanor, body language and other actions during the trial, clearly conveyed the judge's biases and prejudices to the jurors." Amplifying on her complaint of expressive body language, she further contends that

> [t]he judge refused to maintain an air of impartiality. Throughout the trial, the presiding judge constantly looked at the ceiling, moaned, groaned and rolled his eyes whenever Appellant's counsel presented evidence and conducted the examination of Appellant's witnesses. Furthermore, during the Appellant's direct examination, the judge continuously rolled his eyes, moaned, groaned and held his head in disbelief. Alternatively, when the Appellee testified, the judge did not make the same disruptive gestures. The judge never complained, moaned, groaned

---

**3.** Appellant notes at p. 10 of her brief that

> [t]he Appellant and her counsel are African–American. The appellee, her attorney and the trial judge are white. All African–Americans who were in the pool of prospective jurors were stricken from the panel by either the Court or defense counsel. The Court excused all prospective jurors after prospective juror number 39. Among the excused pool were #41, William Ball; #43, Donald Short; and #55, Jonita Carter, all of whom were observed by counsel to be of African–American descent.
>
> All of the prospective jurors up through #39 who appeared to be of African–American descent, i.e., #2, Theresa Bailey; #6, Dorothy Armstrong; and #39, Arthur Carter ... were striken [sic] from the panel by defense counsel.

or rolled his eyes at the Appellee's counsel. In fact, the judge bent over backwards to assist the Appellee's attorney. For example, the judge would wink, nod his head, smile and clear his throat in an obvious effort to prompt the Appellee's attorney to make objections which were then immediately sustained by the Court.

Appellant summarizes her contention, stating: "The presiding judge's words, body language and the inflections in his voice, throughout the trial, clearly communicated his biases to the jury."

Since the proceedings below were not videotaped, counsel for the appellant sought to preserve this issue for our review by stating:

> MS. POWELL: Okay. The other thing for the record, I just want the record to reflect, since this proceeding is not being video taped, it has been our observation throughout the trial that Your Honor has rushed us along,[4] rolled your eyes, yelled at us, complained, moaned and groaned, but only when the plaintiff is speaking or only when the plaintiff's attorneys are speaking.
>
> It is also our observation that Mr. Ethridge is not being rushed along. Additionally, it is our observation that he is being prompted to make objections.
>
> . . . .

---

**4.** The appellant alleges that appellee's counsel was allowed to take as much time as they desired to present her case. The written record does not reflect the amount of time taken by either side in presenting its case, nor does it reveal any instances where the appellant was "rushed along," though the court did make it clear that the trial had to be finished in three days. At the end of the first day of trial, the court asked counsel for the appellant, "Do you have any idea of how long you are going to be?" Counsel responded, "I have probably got at least another hour or so, maybe 40 minutes," whereupon the court decided to recess for the evening. The audiotape which the appellant submitted reveals that the trial judge remained silent even when the intervals between questions asked by appellant's counsel were inordinately long. On several occasions the court acquiesced when counsel requested the court's indulgence. Though the appellant did include an audiotape of these proceedings within the record, we could not independently verify any of the alleged misconduct from the tape or from the written transcript.

I just want to note that for the record.

After the jury had left the courtroom, the trial judge entertained the defendant's motion for judgment which was denied. After the court and counsel discussed several exhibits, they engaged in the following exchange: [5]

"Now, Ms. Powell, you have made some very serious accusations about this Court's lack of impartiality; you have accused the Court of making faces and doing other things to demonstrate bias apparently against the plaintiff and in favor of the defendant; you have made allegations that the jury has improperly discussed this case among themselves in contravention of the Court's order; you have attacked my integrity and you have attacked the jury's integrity; and you have attempted to hang a dark cloud over this case. If you have got any proof of either of these things I suspect now is the time to submit it.

"MS. POWELL: Your Honor, may I be heard?

"THE COURT: Yes.

"MS. POWELL: With respect to the jury, my proposal was that the Court conduct a voir dire of the jury to find out whether there were any permissible discussions. I indicated that I heard, you know, some mention of, "Well, I wonder what she is going to say today." I believe Mr. Randle heard the expert, Murphy's name mentioned. I believe Mrs. Randle, who is present in Court, you know, heard some slight references; we did not hear the entire conversation, which is why we asked whether the Court would be willing to inquire. If the Court inquired and we found that they were just discussing procedural matters, then we would not have any problem with that. We were just asking if the Court would consider inquiring.

"With respect to the other comments, Your Honor, I did not mean any disrespect or anything like that, but I just

---

5. We reproduce in its entirety the colloquy regarding bias between the court and counsel because we believe the verbatim recounting is essential to our analysis of the issue presented.

wanted to make the record clear since this proceedings is not being video taped. I just feel I have an obligation to my client to protect the record.

"THE COURT: Well, you do not have an obligation to accuse the Court of impropriety. If you—

"MS. POWELL: I did not—

"THE COURT: (continuing)—have got any evidence of that, I want you to put it on the record—

"MS. POWELL: I did not accuse you of—

"THE COURT: (continuing)—and if you do not, I expect an apology from you.

"MS. POWELL: I did not accuse you of impropriety, Your Honor. That was not—

"THE COURT: You certainly did.

"MS. POWELL: Those were not my words, Your Honor.

"THE COURT: Your [sic] certainly did. You accused me of making faces and doing other things to demonstrate my bias.

"MS. POWELL: I did not—

"THE COURT: And that is unfair and that is not true.

"MS. POWELL: Your Honor, I did [not] [sic] even mention the word "Bias," Your Honor.

"THE COURT: You mention I was making faces and doing other things improper.

"MS. POWELL: Your Honor, if I may be heard, I believe what I said is during certain portions of the plaintiff's testimony, as well as when plaintiff's counsel, you know, was questioning witnesses, it was my observation that from time to time you did roll your eyes and look at the ceiling, and moan and groan, and rush us along with respect to the time, and, Your Honor, even if you were to look through the transcript, I do not believe that defense counsel has been rushed along or anything like that, I do not believe that defense counsel has been given a hard time, and I just want

the record to reflect that. *I am not accusing you of any bias per se.*

"THE COURT: Well, why did you bring it up if you are not accusing me of something?

"MS. POWELL: I just want to protect the record. I am just trying to properly defend my client, Your Honor.

"THE COURT: Well, how are you properly defending your client by making accusations against me? Are you asking for a mistrial or what are you trying to do—

"MS. POWELL: Your—

"THE COURT: (continuing)—other than to offend me?

"MS. POWELL: I am not trying to offend you, Your Honor. I do not mean disrespect. Just part of my concern is that the jury may possibly be wondering, you know, what is going on. I—like I said, I do not mean disrespect to Your Honor and I was just merely trying to protect the record.

"THE COURT: Well, there is no record of it. If you want to put a record on of anything that I have done that is improper, I am giving you the chance right now, and if you do not have any evidence of it, I resent it.

"MS. POWELL: Your Honor, I stated what my visual observations are; additionally, I believe that I stated from time to time when Mr. Ethridge has not make [sic] an objection to a particular line of questioning, that you in fact looked at him and cleared your throat and nodded at him and so forth, as if to prompt an objection.

"THE COURT: All right. Are you asking—

"MS. POWELL: I would ask that you not—

"THE COURT: Are you asking for a mistrial because of my impropriety?

"MS. POWELL: No, Your Honor, and I would ask that you not hold this against my client. My client does not have anything to do with this. I am merely trying to represent her and I would ask the Court not hold this against my client.

"MR. ETHRIDGE: Your Honor, I will not make any comment, but I am prepared, if a record need be made, to make my observations in response to what plaintiff's counsel is alleging, because I thing [sic] that the comments made by counsel are not true, out of line, and if a record need be made, I will be pleased to speak about my observations. I think this is totally, totally uncalled for, as to the observations by the Court.

"THE COURT: Mr. Randle?

"MR. RANDLE: Your Honor, Mr. Ethridge has a lot of nerve talking about things that are totally uncalled for. When we were in the pretrial stages, trying to settle this case, when we came in to discuss the case in settlement, he called the case fraudulent, period. Did not even want to talk about it. Okay? So, in terms of—

"THE COURT: Well, that has got nothing to do with the—

"MR. RANDLE: I understand that.

"THE COURT: (continuing)—accusations against me.

"MR. RANDLE: I understand that, but with respect to his comments—just with respect to his comments.

"But, Your Honor, what I would like the Court to have clear is that we are not trying to ask for—and we are not asking for a mistrial, we are not doing that, and the perceptions of counsel here are her perceptions. I did not witness that—

"THE COURT: No, but what you are trying to do is hang a dark cloud over me and this case, and if—

"MR. RANDLE: Well, Your Honor—

"THE COURT: (continuing)—[it] is not for the purpose of making a motion for a mistrial, if it is not any other purpose, it is simply scurrilous.

"MR. RANDLE: Your Honor, all I can say is that we are just trying to—counsel is just trying to make a record, I am trying to push the case along, and at this point I hope that you do not harbor any animosity against counsel and the

client with respect to the comments made and we would like to get on with the trial.

"THE COURT: All right. Well, I will put for the record that I have hurried the case along and it is necessary to hurry the case along because I told you in chamber[s], I have told you throughout this trial that it has to be done in three days, and it is just that simple, and I have hurried it along and it needed to be hurried along.

"MR. RANDLE: Your Honor, if I may, if I may add an additional comments [sic]. I know yesterday evening we were rushed through our direct. The reason we could not continue our direct until five o'clock is because a defense witness was called out of turn and took a couple of hours out of our case, and I just want to—

"THE COURT: It did not take two hours. I gave you an hour and a half on—I guess the first day of trial, on Tuesday, you had the plaintiff on for an hour and a half on direct, and you had another 45 minutes. Now, that is two hours and fifteen minutes on direct examination and that is plenty of time, and you were not in any way short-changed on time.

"MS. POWELL: I do not—

"THE COURT: I allowed you to call witnesses, to take the plaintiff off the stand to accommodate experts, and I have tried to accommodate both sides in this case as best I can, and, again, I do not appreciate the insinuations that you have made.

"MR. RANDLE: Thank you, Your Honor.

"THE COURT: We will take a short recess and then we will bring the jury back."

As we see it, the task before us is to determine whether, in the first instance, the appellant has made a sufficient record for us to decide whether the trial judge was racially biased against counsel and their client and, if we are satisfied that the record demonstrates bias on the part of the

lower court, whether that bias effectively denied the appellant a fair trial.[6]

While we recognize the Hobson's Choice[7] confronting counsel who wish to make an adequate record that a trial judge has exhibited personal or racial bias during the course of a proceeding, we believe that, in fairness to all concerned, such a Hobson's Choice must be made. More specifically, we recognize that counsel have an obligation to do nothing which will harm the interests of the client; and, unquestionably, alienating the trial judge cannot be viewed as in the client's best interests. On the other hand, the integrity of the system requires no less than that there be safeguards against the potential abuse of frivolous charges aimed at securing additional grounds for review of an unfavorable decision.

■ We first consider whether the appellant has successfully preserved the issue for our review. Appellant properly registered her objections to the trial court's demeanor by detailing the specific objectionable conduct on the record.

---

**6.** We intimate no view as to the truth of these charges. We further stress that, on this appeal, assuming the sufficiency of the record, our inquiry is limited to what impact, if any, the trial judge's alleged conduct had on the appellant's ability to obtain a fair trial. We are not here otherwise concerned with adjudication of judicial misconduct. Nevertheless, trial judges, even when under the severe time constraints occasioned by overcrowded dockets, should take great pains to avoid facial expressions, gestures, and body language which could be construed as impatience or intolerance directed to either side. We believe that even unintended manifestations of bias have the same potential for improperly influencing a jury as verbal expressions of incredibility or disbelief directed at either party. *See Ferrell v. State,* 73 Md.App. 627, 638, 536 A.2d 99 (1988); *Vandegrift v. State,* 237 Md. 305, 310, 206 A.2d 250 (1965). Admonitions to counsel to proceed more expeditiously should be made, as they were in this case, out of the presence or earshot of the jury.

**7.** Derived from a practice of Thomas Hobson, seventeenth century English liveryman, requiring every customer to take the horse which stood nearest the door; an apparent freedom of choice where no such freedom exists; an apparent freedom of choice when there is no real alternative. *Webster's Third New International Dictionary of the English Language Unabridged* (1986).

The Court of Appeals in *Surratt v. Prince George's County*, 320 Md. 439, 468, 578 A.2d 745 (1990), set forth the procedure to be followed when seeking recusal of the trial judge for alleged personal misconduct:

Finally, in order to trigger the recusal procedure we here prescribe, a motion must be timely filed. To avoid disruption of a trial, or the possible withholding of a recusal motion as a weapon to use only in the event of some unfavorable ruling, the motion generally should be filed as soon as the basis for it becomes known and relevant.

The recusal motion filed here, as enlarged upon in open court, meets all of these criteria. It alleges sexual harassment by a judge, a matter we regard as involving serious personal misconduct.... It was supported by sufficient factual detail. "[A] reasonable member of the public knowing all the circumstances would be led to the conclusion that the judge's impartiality might reasonably be questioned." ... The facts, it is true, were not set forth in an affidavit or by testimony under oath. They were, however, stated on the record by a lawyer who was competent to testify about them, and in the presence of opposing counsel and the judge who was the subject of the charges. In the circumstances, we view this as the functional equivalent of an affidavit or testimony. The lawyer would have been subject to serious sanctions for making false statements. [Footnote omitted; citation omitted.]

We believe that counsel in the case before us properly raised the issue in the first instance, as the charges stated on the record would have been the functional equivalent of an affidavit or testimony. We further note that, when the question of bias was first raised, appellant's charges contained "facts in reasonable detail sufficient to show the purported misconduct" rather than "mere conclusions as to lack of impartiality." *Surratt* at 467, 578 A.2d 745.

Although *Surratt* dealt with the question of recusal, the manner in which counsel attempted to raise judicial bias

was similar to the case *sub judice* in that counsel claimed, "The judge by facial expression and body language conveyed to the *Surratt* jury his lack of patience or his exasperation with her efforts. She said her client noticed this and wanted to know why the judge was treating her so badly." The factual backdrop in *Surratt* differs, however, in that the trial judge there made no effort to deny what counsel had put on the record, nor did he offer any explanation. *Surratt* at 463, 578 A.2d 745. His only comment during the lengthy recital by counsel had been "I don't have any recollection of what you are talking about." In the instant case, the lower court, in vociferous indignation, railed at the accusations which had been made and specifically invited counsel that "[i]f you have got any proof of either of these things, I suspect now is the time to submit it."

Significantly, counsel told the court that she did not "even mention the word 'bias'" and ultimately capitulated that "I am not accusing you of any bias per se." The court then asked counsel why the subject was raised if counsel were not lodging an accusation against it.

We recognize that counsel is in a precarious position when he or she believes the trial judge, by his actions, has caused harm to his or her client's case. The dilemma is he or she must choose between, on the one hand, remaining mute and not protecting a client's interest or, on the other hand, incurring the wrath of the trial judge in an effort to preserve a record on which the lower court's actions may be reviewed. Nevertheless, it is incumbent upon counsel to state with clarity the specific objection to the conduct of the proceedings and make known the relief sought. Where, as here, counsel relented and advised the court that she was not claiming that he was prejudiced against her or her client, she, in effect, left nothing for the trial judge to do. Indeed, had counsel reasserted her claims of improper gestures and suggestive body language at some later point in the trial, at least inferentially, it could be concluded that the objectionable conduct had not ceased.

In addition to the court's invitation to present proof of the allegations made, it specifically inquired, "Are you asking for a mistrial or what are you trying to do?" The court further rejoined, "Well, there's no record of it. If you want to put a record on of anything that I have done, I am giving you a chance right now, and if you do not have any evidence of it, I resent it." The court thereafter repeated its inquiry as to whether counsel was seeking a mistrial whereupon appellant's counsel responded that she did not want a mistrial, but was "merely trying to represent her client," and asked the trial court not to hold "this against my client."

We believe that if the only relief appellant was seeking was for the trial court not to hold anything against her client, absent some indication from the record that she was unsatisfied with the court's demeanor subsequent to her request, we must conclude that she obtained the relief sought. The appellant expressly declined on several occasions the lower court's invitation to her to move for a mistrial. Unlike counsel in *Surratt,* the relief sought was not recusal; thus, the trial judge did not have that option presented to him. We are now asked, on the record before us, to reverse the jury verdict in favor of the appellee where the range of options to cure any possible prejudice was not presented to the trial judge despite the fact that he specifically asked, "What are you trying to do?"

We hold that, in order to obtain review of the conduct and actions of a trial judge during the course of a proceeding in which it is alleged that such conduct is detrimental to a party's case and where the party raises the issue during the trial,[8] review of that conduct, as a practical matter, requires a record in which (1) facts are set forth in reasonable detail sufficient to show the purported bias of the trial judge; (2) the facts in support of the claim must be

---

8. *Cf. Surratt* wherein motion to vacate remittitur order and for recusal of trial judge was made *after* culmination of the trial. 320 Md. at 461, 578 A.2d 745.

made in the presence of opposing counsel and the judge who is the subject of the charges; (3) counsel must not be ambivalent in setting forth his or her position regarding the charges; and (4) the relief sought must be stated with particularity and clarity. In requiring counsel to register charges of bias thusly, we seek to prevent conclusory allegations of bias from being sufficient to upset an unfavorable verdict and, at the same time, obviating the necessity for holding a mini-trial on the truth of the allegations. *See Surratt v. Prince George's County, supra,* at 467, n. 9, 578 A.2d 745. In the case *sub judice,* counsel's attempt to raise the question of judicial bias fails principally to put the trial judge on notice as to the relief sought and further obfuscates the charges by recanting them. We cannot say that on the record before us the trial judge's actions prejudiced the jury against the appellant because she either received the relief sought or failed to make known what the trial judge should have done to ensure a fair trial.

### Juror Misconduct

The appellant next complains that the jurors were prejudiced and guilty of misconduct. The record reflects that at the beginning of trial, as well as whenever the jury was excused from the courtroom, jurors were instructed by the court not to discuss anything that they had heard among themselves or with anyone else. The appellant's counsel alleges that they overheard certain members of the jury discussing what they believed to be the testimony of witnesses. Counsel then requested that the court voir dire each juror to determine if any had discussed testimony, in contravention of the court's instruction. The trial court refused.

In deciding whether a party has been denied a fair trial due to juror misconduct, the Court of Appeals advises that

"[t]he better rule in such cases would seem to be that such questions be left to the sound discretion of the trial court, whose decision should only be disturbed in those

cases where there has been a plain abuse of discretion, resulting in palpable injustice."

*Safeway Trails, Inc. v. Smith*, 222 Md. 206, 217–18, 159 A.2d 823 (1960), quoting *Rent–A–Car Co. v. Globe & Rutgers Fire Ins. Co.*, 163 Md. 401, 409, 163 A. 702 (1933).

In a bench conference concerning this issue, the following colloquy took place:

MS. POWELL: Your Honor, do you suppose it would be possible for you to perhaps voir dire the jurors, because the jurors have been discussing the case to some extent. I am not sure exactly to what extent.

THE COURT: What indication is there that they have been discussing the case?

MS. POWELL: I overheard portions of it; they were wondering what someone's testimony would be today. Mr. Randle heard them mention some things and Patricia Randle also heard a couple of things. We did not hear the complete conversation, but I am requesting that perhaps the Court voir dire each of the jurors to find out to what extent they may have discussed the case.

THE COURT: I have rode down—I must say that I rode down on the elevator with some of the jurors yesterday. They did want to know what testimony was remaining. They were not discussing—I guess they were wondering about when we are going to finish. I know to that extent they said something.

Is there any indication that they have discussed the testimony of any witnesses?

MS. POWELL: Well, I am not sure. We heard Murphy's name and I believe we heard Ms. Faber's name—

. . . .

THE COURT: Well, unless there is something more substantial than you have represented, I am just not really prepared to take time to [voir dire each member of the jury].

The record before us reveals an insufficient factual basis to require the court to voir dire each juror as to whether he

or she discussed testimony. The Court of Appeals in *Safeway, supra,* instructed that "not every trivial act on the part of a juror ... amounts to such misconduct as requires the withdrawal of [that] juror." *Id.* 222 Md. at 217, 159 A.2d 823, quoting *Rent-A-Car,* 163 Md. at 408, 163 A. 702. Had the appellant been more specific concerning which jurors she heard talking or as to exactly what she heard, then a more compelling argument could have been made for conducting voir dire of the jury. The court recalled that on the preceding day jurors had asked questions about what testimony was remaining, concluding that they wanted to know when the trial would end. This conversation had occurred in the elevator. Appellant's counsel was unable to say more than that "we heard Murphy's name and I believe we heard Ms. Faber's name" when asked by the court if there was "any indication that they have discussed the testimony of any witnesses." Although individual voir dire of the jurors might have resolved any question of possible juror misconduct and indeed under all the circumstances of this particular case may have been desirable, the decision of the trial court does not, in our view, amount to a plain abuse of discretion, resulting in palpable injustice.[9]

### Abuse of Discretion

The appellant alleges that the trial court abused its discretion in a number of instances throughout the trial. First, the appellant asserts that the trial court abused its discretion by failing to grant its motion *in limine* to exclude Dr. Mizukawa's testimony because the appellee failed to list him in response to interrogatories concerning expert witnesses.

A motion *in limine* is not a ruling on the evidence. It is a procedural step prior to the offering of evidence, which

---

9. The trial judge is vested with particularly broad discretion in deciding whether to voir dire a jury to ascertain juror misconduct, because absent alleged conduct which patently affects the right to a fair trial, intrusive questioning of jurors may cause greater curiosity among uninvolved jurors, thus rendering the cure more harmful than the ill.

serves the purpose of pointing out before trial certain evidentiary rulings that the court may be called upon to make. *Funkhouser v. State,* 51 Md.App. 16, 23–24, 440 A.2d 1114 (1982). As we have previously ruled that the power over the introduction of evidence is soundly within the discretion of the trial court and that, in this case, we find no error in the trial court's decision to introduce Dr. Mizukawa's testimony, we therefore find no error in the trial court's denial of the appellant's motion *in limine.*

■ The appellant next argues that the trial court erroneously allowed counsel for the appellee to make misleading statements as to the law applicable to the aggravation of pre-existing injuries during his opening statements without giving a curative instruction at the close of the statements. The rule regarding opening statements was clearly articulated in *Thimatariga v. Chambers,* 46 Md.App. 260, 266, 416 A.2d 1326 (1980), when this Court found that the following advisory instructions given by the trial court were sufficient and a correct statement of the rule:

> "What the lawyers say in their opening statements and what they say in their closing arguments and what they say in making objections or in making motions are not evidence. The evidence consists of the testimony of the witnesses, any exhibits which may be placed into evidence for your viewing, and any facts which may be stipulated to or agreed upon by both sides."

In the present case, the trial court in fact articulated the above rule as its reason for declining to instruct the jury when counsel's opening statements were made. We also note that the court did instruct the jury as to the aggravation of a pre-existing injury at the close of all of the evidence.

Since counsel for the appellee's opening statement was not evidence under our holding in *Thimatariga, supra,* and the court gave a proper instruction on aggravation of a pre-existing injury at the close of all of the evidence, we find no

abuse of discretion in failing to instruct the jury when the alleged statements were made.

　　　Third, the appellant protests the court's refusal to admit Appellant's Exhibit No. 1 (an estimate for dental restoration work) into evidence until the last day of trial. The record reveals that the appellant marked the estimate as Plaintiff's Exhibit 1 for identification purposes on April 16, 1991, the first day of trial, and used it as part of the direct examination of Dr. Murphy. When the appellant subsequently moved to admit the estimate, the court reserved ruling on the admission subject to the presentation of evidence as to causal relationship, without objection from the appellant. On the third day of trial, after the appellant had presented evidence as to causal relationship, the court admitted the estimate. Therefore, we find, that to the extent that the court committed error by not admitting the estimate on the first day, that error was cured by the estimate's subsequent admission by the court.[10]

As for the appellant's remaining evidentiary objections—namely, the trial court allowing the appellee to cross-examine the appellant's witness using another doctor's report, the admission of the emergency room report, the court's refusal to admit Dr. Schuster's report, and the court's unwillingness to allow Dr. Weiner to testify as to the number of hours necessary to perform the restorative dental work or to allow Dr. Murphy to present cost estimates—all go to damages. It is well settled that evidentiary rulings are well within the discretion of the trial court and will not be disturbed absent abuse.

Because the jury eventually found for the appellee as to liability, the subject of the appellant's damages becomes a non-issue. Before the appellant can compel the appellee to pay for her injuries, the appellant must first prove that the

---

**10.** In counsel's reproduction of the trial transcript, in their brief concerning the admission of Plaintiff's Exhibit 1, appellant's counsel reports only that "[i]t will not be received." The rest of the court's statement concludes that "Number 1 will be."

appellee in fact caused her injuries. As the appellant lost on the threshold issue of liability, there is no need to consider damages. Therefore, any error that the court may have made, which we do not find, would be harmless as those rulings did not affect the jury's decision as to liability.

## Constitutional Right to a Fair Trial

Finally, the appellant contends that she was denied her constitutional right to a fair trial. As we have held that the record does not support appellant's allegations of error, abuse of discretion, or bias, we hold that the appellant thus was not denied a fair trial.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.